# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.

**SUNIL KAVURI**, *et al.,* on behalf of themselves
and all others similarly situated,

                *Plaintiff,*                      **CLASS ACTION COMPLAINT**

*v.*                                        **JURY DEMAND**

**SAM BANKMAN-FRIED**, *et al.,*

                *Defendants.*

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

"Then there's things that have happened with Voyager *and with FTX now*—that's somebody running a company that's *just dumb as fu** greedy*. So, what does Sam Bankman do? He just, give me more, give me more, give me more, so I'm gonna borrow money, loan it to my affiliated company, and hope and pretend to myself that the FTT tokens that are in there on my balance sheet are gonna sustain their value."[1]

### – Mark Cuban, Nov. 12, 2022



### – Defendant Sam Bankman Fried (Former CEO, FTX)

---

[1] https://www.yahoo.com/video/ftx-twitter-chaos-embarrassing-athletes-195343800.html (accessed November 21, 2022).

Plaintiff Sunil Kavuri ("Plaintiff") files this class action complaint on behalf of himself, and all others similarly situated, against Sam Bankman-Fried, Tom Brady, Gisele Bundchen, Stephen Curry, Golden State Warriors, Shaquille O'Neal, Udonis Haslem, David Ortiz, William Trevor Lawrence, Shohei Ohtani, Naomi Osaka, Lawrence Gene David, and Kevin O'Leary (collectively, "Defendants"), all parties who either controlled, promoted, assisted in, and actively participated in FTX Trading LTD d/b/a FTX's ("FTX Trading") and West Realm Shires Services Inc. d/b/a FTX US's ("FTX US") (collectively, the "FTX Entities"), offer and sale of unregistered securities in the form of yield-bearing accounts ("YBAs") to persons and entities residing outside of the United States, seeking to recover damages, declaratory and/or injunctive relief stemming from the offer and sale of FTX Trading's and FTX US's yield-bearing cryptocurrency accounts.[2]

## INTRODUCTION

1.     There can be no dispute that claims in this case must provide for ***strict liability,*** and therefore if these YBAs are found to be "securities," all of the FTX "brand ambassadors" can simply have no defense to the claims in this action. **The Defendants pushing the "caveat emptor" defense in the press, will have no application.**

2.     This is not a case where Mr. Kuvari made a "risky" investment in stock or cryptocurrency, or that he lost money speculating on various cryptocurrency projects. Plaintiff's claim arises simply from the purchase of a YBA, an account with FTX that every customer who signed up for the FTX app received by default, and which, as explained below, was guaranteed to generate returns on his significant holdings in the account, regardless of whether those assets were held as USD, legal tender or cryptocurrency, and regardless of whether any trades were made with the assets held in the YBA. In other words, the YBA was portrayed to be like a bank account, something that was "very safe" and "protected." That is the narrative that Defendants pushed in promoting the offer and sale of the YBAs, which are unregistered securities. For that, Defendants are liable for Mr. Kuvari's losses, jointly and severally and to the same extent as if they were themselves the FTX Entities.

---

[2]     Undersigned Counsel represents many hundreds of injured Voyager investors in the related action against Mark Cuban and the Dallas Mavericks, styled *Pierce Robertson, et al., v. Mark Cuban, et al.,* No. 22-CV-22538-ALTMAN/REID (S.D. Fla.), currently pending before the Honorable Federal Judge Roy Altman here in the Southern District of Florida, and have been following these FTX events as they unfolded very closely. Moreover, discovery has yet to commence, but Plaintiff's counsel anticipates adding additional responsible parties as Defendants.

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

3.     Literally overnight, Mr. Kuvari's assets held in his YBA on the Deceptive FTX Platform were robbed from him as FTX imploded and former-CEO, Sam Bankman-Fried, filed a Chapter 11 bankruptcy petition in Delaware on an emergency basis. This happened because, as explained by the new CEO of the failed FTX Entities:

> I have over 40 years of legal and restructuring experience. I have been the Chief Restructuring Officer or Chief Executive Officer in several of the largest corporate failures in history. I have supervised situations involving allegations of criminal activity and malfeasance (Enron). I have supervised situations involving novel financial structures (Enron and Residential Capital) and cross-border asset recovery and maximization (Nortel and Overseas Shipholding). Nearly every situation in which I have been involved has been characterized by defects of some sort in internal controls, regulatory compliance, human resources and systems integrity.

> *Never* in my career have I seen such a complete failure of corporate controls and such a **complete absence of trustworthy financial information** as occurred here. From compromised systems integrity and faulty regulatory oversight abroad, to the concentration of control in the hands of a very small group of inexperienced, **unsophisticated** and **potentially compromised** individuals, **this situation is** **unprecedented**.

*See* In re: FTX Trading Ltd, et al., No. 22-11068 (JTD), ECF No. 24, ¶¶ 4–5 (D. Del. Nov. 17, 2022) (emphasis added).

4.     This should not have happened. Not to Mr. Kuvari, and not to the thousands of other FTX customers who now find themselves in the same predicament.

5.     The Cryptocurrency National Disaster is growing by the billions almost every day. More crypto companies are filing new federal bankruptcy petitions each day, all running for protection from the billions of dollars of losses they directly caused to thousands of investors here in Florida and across the globe. This is by far the largest securities national disaster, greatly surpassing the Madoff Ponzi Scheme, and could very likely become a complex international litigation disaster, similar to how the hundreds of thousands of asbestos cases swamped all courts across the globe. Unless a workable, coordinated, and organized structure is established now, at the very onset of these proceedings, here in Miami, which served as the epicenter for the crypto fraud, the FTX victims will continue to suffer and the only people to benefit will be the professionals in the bankruptcy and civil courts.

6.     One common and identical question in this case, and in many other cryptocurrency litigation matters, is simply whether the SEC was correct, in finding that all of these YBAs are (or are not) the sale of "unregistered securities." This question can and should be decided quickly for all of the parties, so that all cryptocurrency litigation can be quickly advanced and the victims (and alleged co-conspirators) have a clear and expedited path.

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

7. Moreover, this question was already practically answered in the affirmative through various regulatory statements, guidance, and actions issued by the Securities and Exchange Commission and other regulatory entities. For example, on November 1, 2017, in the "SEC Statement Urging Caution Around Celebrity Backed ICOs,"[3]

> In the SEC's Report of Investigation concerning The DAO,[4] the Commission warned that virtual tokens or coins sold in ICOs may be securities, and those who offer and sell securities in the United States must comply with the federal securities laws. Any celebrity or other individual who promotes a virtual token or coin that is a security must disclose the nature, scope, and amount of compensation received in exchange for the promotion. A failure to disclose this information is a violation of the anti-touting provisions of the federal securities laws. **Persons making these endorsements may also be liable** for potential violations of the anti-fraud provisions of the federal securities laws, **for participating in an unregistered offer and sale of securities**, and for acting as unregistered brokers. The SEC will continue to focus on these types of promotions to protect investors and to ensure compliance with the securities laws.

8. Not only that, but the SEC and state securities regulators have also targeted cryptocurrency brokers and exchanges just like FTX for offering almost this exact same type of interest-bearing account, finding that exchanges such as BlockFi,[5] Voyager,[6] and Celsius[7] all offered these same accounts as unregistered securities.

9. The Deceptive and failed FTX Platform emanated from Miami, Florida and was based upon false representations and deceptive conduct. FTX's fraudulent scheme was designed to take advantage of unsophisticated investors from across the globe, who utilize mobile apps to make their investments. As a result, consumers around the globe collectively sustained billions of dollars in damages. FTX organized and emanated its fraudulent plan from its worldwide headquarters located here in Miami, Florida. Miami became the "hot spot" for crypto companies, hosting the most

---

[3]     https://www.sec.gov/news/public-statement/statement-potentially-unlawful-promotion-icos (accessed November 21, 2022).

[4] https://www.sec.gov/litigation/investreport/34-81207.pdf (accessed November 21, 2022)

[5] https://www.sec.gov/news/press-release/2022-26 (accessed November 21, 2022).

[6]     https://coingeek.com/6-us-regulators-crackdown-on-voyager-digital-over-interest-bearing-accounts/ (accessed November 21, 2022).

[7]

https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&cad=rja&uact=8&ved=2ahUKEwjvjNvg27j7AhWfRTABHfwzDe4QFnoECAsQAQ&url=https%3A%2F%2Fwww.nj.gov%2Foag%2Fnewsreleases21%2FCelsius-Order-9.17.21.pdf&usg=AOvVaw0Zd94fuhFSsOoGKM-vQ3YI (accessed November 21, 2022).

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

investments in crypto startups as well as the annual Bitcoin Miami 2022 Global Forum. Several crypto companies, including crypto exchange Blockchain.com, Ripple and FTX.US, moved their headquarters to Miami. Others, including fellow exchange eToro, expanded their U.S. presence with offices in Miami. FTX was already very familiar with Miami, signing a deal worth more than $135 million dollars for the naming rights of the waterfront arena, where 3-time NBA Champions the Miami Heat play.

## FACTUAL BACKGROUND

10.     On December 24, 2021, counsel for Plaintiff and the proposed class members brought the first (and only) putative nationwide class action complaint against the now-defunct cryptocurrency trading app, Voyager, styled *Mark Cassidy v. Voyager Digital Ltd., et al,* Case No. 21-24441-CIV-ALTONAGA/Torres (the "*Cassidy* Action"), alleging that the platform owned and operated by Voyager Digital Ltd. ("Voyager") and Voyager Digital LLC ("VDL") was an unregulated and unsustainable fraud. In the *Cassidy* Action, plaintiffs also alleged that Defendant Ehrlich, Voyager's CEO, teamed up with Defendants Cuban and the Dallas Mavericks to promote Voyager, by making false representations and employing other means of deception. As a result, the Voyager plaintiffs and Voyager class members, all sustained losses in excess of $5 billion.

11.     The allegations in the *Cassidy* complaint—and specifically Mark Cuban's role in promoting Voyager—received national attention. *See* https://www.jdsupra.com/legalnews/new-lawsuits-target-cryptocurrency-9604406/ (summarizing the allegations and explaining that "Mark Cuban, owner of the NBA's Dallas Mavericks, is a major stakeholder in Voyager. The complaint alleges that he made comments at a press conference in which he specifically targeted unsophisticated investors 'with false and misleading promises of reaping large profits in the cryptocurrency market.'"); https://www.law.com/dailybusinessreview/2021/12/29/mark-cuban-linked-crypto-platform-hit-with-florida-nationwide-class-action-lawsuit-in-miami-federal-court/?slreturn=20220701214901 (same, in the *Daily Business Review*).

12.     After the *Cassidy* Complaint was filed, the following important actions took place:

(a)     the United States Securities and Exchange Commission (SEC) began an enforcement review focused on whether Voyager's Earn Program Accounts ("EPAs") constitute unregistered securities;

(b)     seven state Attorneys General (New Jersey, Alabama, Kentucky, Oklahoma, Texas, Vermont and Washington) took specific action finding that Voyager was violating their state laws, including issuing

"cease and desist" letters to Voyager, finding that the EPA was an unregistered security, prohibiting the crypto-asset broker-dealer from selling any more unregistered securities (finding that Voyager used these EPAs to raise millions of dollars in revenue worldwide as of March 1, 2022; and

(c)    on March 29, 2002, the State of New Jersey Bureau of Securities entered a Cease and Desist Order against Voyager, finding that the EPA was not exempt from registration under the law, and instead that it must be registered—and as a result, Voyager's stock price tanked by 25% in a day and is down over 80% for the year.[8]

13.    On July 5, 2022, Voyager Digital Holdings, Inc. and two affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code. Voyager's bankruptcy cases (the "Voyager Bankruptcy Cases") are jointly administered under Case No. 22-10943 before the Honorable Michael E. Wiles in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

14.    On September 28, 2022, Voyager filed a motion in the Voyager Bankruptcy Cases seeking authority to enter into an asset purchase agreement with West Realm Shires Inc., d/b/a FTX US whereby Voyager will sell substantially all of its assets for a purchase price of approximately $1.422 billion, which includes (i) the value of cryptocurrency on the Voyager platform as of a date to be determined, which, as of September 26, 2022, is estimated to be $1.311 billion, plus (ii) additional consideration which is estimated to provide at least approximately $111 million of incremental value to the Debtors' estates.

15.    Everyone involved in the Voyager Bankruptcy Cases thought that the FTX Entities were the *deus ex machina* come to save the day by bailing out Voyager and paying back at least some of the losses the Voyager customers sustained.

16.    Instead, as explained below, the FTX Entities imploded, their over $30 billion in value evaporated almost overnight, and the FTX Entities found themselves filing their own emergency Chapter 11 bankruptcy petition in Delaware. The Deceptive FTX Platform maintained by the FTX Entities was truly a house of cards, a Ponzi scheme where the FTX Entities shuffled customer funds

---

[8] https://seekingalpha.com/article/4498956-voyager-digital-plunged-25-percent-heres-why (accessed October 28, 2022); https://seekingalpha.com/article/4503716-voyager-digital-buy-dip-during-crypto-crash (accessed November 21, 2022).

between their opaque affiliated entities, using new investor funds obtained through investments in the YBAs and loans to pay interest to the old ones and to attempt to maintain the appearance of liquidity.

17.     Part of the scheme employed by the FTX Entities involved utilizing some of the biggest names in sports and entertainment—like these Defendants—to raise funds and drive global consumers to invest in the YBAs, which were offered and sold largely from the FTX Entities' domestic base of operations here in Miami, Florida, pouring billions of dollars into the Deceptive FTX Platform to keep the whole scheme afloat.

18.     Importantly, although Defendants disclosed their partnerships with the FTX Entities, they have never disclosed the nature, scope, and amount of compensation they personally received in exchange for the promotion of the Deceptive FTX Platform, which the SEC has explained that a failure to disclose this information would be a violation of the anti-touting provisions of the federal securities laws.[9] Moreover, none of these defendants performed any due diligence prior to marketing these FTX products to the public.

19.     The SEC took action against boxing champ Floyd Mayweather and music producer DJ Khaled after they were paid by cryptocurrency issuers to tweet promotional statements about investing in Initial Coin Offerings (ICOs), ordering them both to pay disgorgement, penalties and interest for promoting investments in ICOs, including one from cryptocurrency issuer Centra Tech, Inc, for a combined total of $767,500 because they failed to disclose that their promotional efforts on Twitter were paid endorsements.[10]

20.     Other celebrities similarly accused and prosecuted for failing to disclose their paid endorsements include Kim Kardashian and basketball player Paul Pierce.[11] According to the Federal Trade Commission, cryptocurrency scams have increased more than ten-fold year-over-year with consumers losing more than $80 million since October 2020, due in large part to the use of such celebrity endorsements.[12]

---

[9]     https://www.ubergizmo.com/2017/11/sec-celebrities-disclose-payment-cryptocurrency-endorsements/#:~:text=It%20has%20issued%20a%20statement%20warning%20celebrities%20that,without%20disclosing%20that%20they%E2%80%99ve%20been%20paid%20for%20it (accessed November 21, 2022).

[10]     https://news.bloomberglaw.com/us-law-week/insights-celebrity-endorsements-and-cryptocurrency-a-cautionary-tale (accessed November 21, 2022).

[11]     https://blockbulletin.com/news/altcoins/kim-kardashian-among-other-celebrities-sued-for-promoting-cryptocurrencies/ (accessed November 21, 2022).

[12]     https://florida.foolproofme.org/articles/770-celebrity-cryptocurrency-scam (accessed November 21, 2022).

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

21.    As explained more fully in this Complaint, Defendants' misrepresentations and omissions made and broadcast around the globe through the television and internet render them liable to Plaintiff and class members for soliciting their purchases of the unregistered YBAs. *Wildes v. Bitconnect Int'l PLC*, No. 20-11675 (11th Cir. Feb. 18, 2022) (holding that promoters of cryptocurrency through online videos could be liable for soliciting the purchase of unregistered securities through mass communication, and no "personal solicitation" was necessary for solicitation to be actionable).

22.    This action seeks to hold Defendants responsible for the many billions of dollars in damages they caused Plaintiff and the Class and to force Defendants to make them whole.

## PARTIES

23.    Plaintiff Sunil Kavuri is a citizen and resident of the United Kingdom. He is a natural person over the age of 21 and is otherwise *sui juris*. Plaintiff Kavuri purchased an unregistered security from FTX in the form of a YBA and funded the account with a sufficient amount of crypto assets to earn interest on his holdings. Plaintiff Kavuri did so after being exposed to some or all of Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as detailed in this complaint, and/or executed trades on the Deceptive FTX Platform in reliance on those misrepresentations and omissions. As a result, Plaintiff Kavuri has sustained damages for which Defendants are liable.

24.    Defendant Thomas Brady, NFL quarterback currently playing for the Tampa Bay Buccaneers, is a brand ambassador of FTX, and is a citizen and resident of Miami-Dade County, Florida.

25.    Defendant Gisele Bundchen, one of the world's highest-paid models and a brand ambassador for FTX, is a citizen and resident of Miami-Dade County, Florida.

26.    Defendant Kevin O'Leary, "Mr. Wonderful," a businessman, television personality appearing regularly on *Shark Tank*, and brand ambassador for FTX, is a citizen and resident of Miami Beach, Florida.

27.    Defendant Udonis Haslem, an American professional basketball player for the Miami Heat of the NBA and brand ambassador of FTX, is a citizen and resident of Miami-Dade County, Florida.

28.    Defendant David Ortiz, former designated hitter and first baseman in the MLB and a brand ambassador for FTX, is a citizen and resident of the State of Florida.

29.    Defendant Sam Bankman-Fried, founder and former CEO of FTX and former billionaire, is a citizen and resident of the Bahamas.

30.    Defendant Stephen Curry, professional basketball player for the Golden State Warriors of the NBA and brand ambassador for FTX, is a citizen and resident of the State of California.

31.    Defendant Golden State Warriors LLC is a professional basketball team in the NBA that officially launched their partnership with FTX in 2022 with the unveiling of the FTX logo on the court at the Chase Center, and is a corporation operating and existing under the laws of the State of California.

32.    Defendant Shaquille O'Neal, former professional NBA basketball star, sports analyst, entrepreneur, and FTX brand ambassador, is a citizen and resident of Collin County, Texas.

33.    Defendant William Trevor Lawrence, the quarterback for the Jacksonville Jaguars of the NFL and a brand ambassador for FTX, is a citizen and resident of the state of Mississippi.

34.    Defendant Shohei Ohtani, a professional baseball pitcher, designated hitter and outfielder for the Los Angeles Angels of the MLB and a brand ambassador for FTX, is a citizen and resident of the State of California.

35.    Defendant Naomi Osaka, a professional tennis player and brand ambassador for FTX, is a citizen and resident of Beverly Hills, California.

36.    Defendant Lawrence Gene David, an American comedian, writer, actor, television producer, and FTX brand ambassador, is a citizen and resident of Los Angeles, California.

### JURISDICTION AND VENUE

37.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than the Defendants.

38.    This Court has personal jurisdiction against Defendants because they conduct business in Florida, and/or have otherwise intentionally availed themselves of the Florida consumer market through the promotion, marketing, and sale of FTX's YBAs in Florida, which constitutes committing a tortious act within the state of Florida. Defendants have also marketed and participated and/or assisted in the sale of FTX's unregistered securities to consumers in Florida. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

39.    Venue is proper in this District under 28 U.S.C. § 1391 because thousands of Class Members either reside in this District; Defendants engaged in business in this District; a substantial part of the events or omissions giving rise to the claims at issue occurred in this District; and because

Defendants entered into transactions and/or received substantial profits from Class Members who reside in this District.

40.     All conditions precedent to the institution and maintenance of this action have been performed, excused, waived, or have otherwise occurred.

## FACTUAL ALLEGATIONS

### A.     Background on FTX.

41.     Until seeking the protection of the Bankruptcy Court, the FTX Entities operated a multi-billion-dollar mobile application cryptocurrency investment service (the "Deceptive FTX Platform") that placed cryptocurrency trade orders on behalf of users like Plaintiff and Class Members and offered interest bearing cryptocurrency accounts.

42.     The FTX group of companies (FTX Group or FTX) was founded in 2019 and began as an exchange or marketplace for the trading of crypto assets. FTX was established by Samuel Bankman-Fried, Gary (Zixiao) Wang and Nishad Singh, with operations commencing in May 2019. FTX was purportedly established in order to build a digital asset trading platform and exchange for the purpose of a better user experience, customer protection, and innovative products. FTX built the FTX.com exchange to develop a platform robust enough for professional trading firms and intuitive enough for first-time users.

43.     Prior to that, The Silicon Valley-born, MIT-educated Bankman-Fried, also known as SBF, launched his crypto trading firm, Alameda Research, in 2017,[13] after stints in the charity world and at trading firm Jane Street.[14]

44.     The FTX.com exchange was extremely successful since its launch. This year around $15 billion of assets are traded daily on the platform, which now represents approximately 10% of global volume for crypto trading. The FTX team has grew to over 300 globally. Although the FTX Entities' primary international headquarters is in the Bahamas, its domestic US base of operations is located in Miami, Florida.[15]

45.     FTX quickly became one of the most utilized avenues for nascent investors to purchase cryptocurrency. By the time FTX filed for bankruptcy protection, customers had entrusted billions of dollars to it, with estimates ranging from $10-to-$50 ***billion dollars***.

---

[13]     https://www.businessinsider.com/ftx-crypto-king-sam-bankman-fried-rise-and-fall-2022-11 (accessed November 21, 2022).

[14]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed November 21, 2022).

[15]     https://www.coindesk.com/business/2022/09/27/crypto-exchange-ftx-is-moving-its-us-headquarters-from-chicago-to-miami/ (accessed November 21, 2022).

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

46.     Bankman-Fried got rich off FTX and Alameda, with the two companies netting $350 million and $1 billion in profit, respectively, in 2020 alone, according to Bloomberg.

47.     At his peak, Bankman-Fried was worth $26 billion. At 30, he had become a major political donor, gotten celebrities like the Co-Defendants in this action to vociferously promote FTX, and secured the naming rights to the arena where the NBA's Miami Heat play.[16]

48.     In early November 2022, crypto publication CoinDesk released a bombshell report that called into question just how stable Bankman-Fried's empire really was.[17]

49.     Bankman-Fried's cryptocurrency empire was officially broken into two main parts: FTX (his exchange) and Alameda Research (his trading firm), both giants in their respective industries. But even though they are two separate businesses, the division breaks down in a key place: on Alameda's balance sheet, which was full of FTX – specifically, the FTT token issued by the exchange that grants holders a discount on trading fees on its marketplace. While there is nothing per se untoward or wrong about that, it shows Bankman-Fried's trading giant Alameda rests on a foundation largely made up of a coin that a sister company invented, not an independent asset like a fiat currency or another crypto. The situation adds to evidence that the ties between FTX and Alameda are unusually close.[18]

50.     After obtaining this information, Changpeng "CZ" Zhao, the CEO of Binance, decided to liquidate roughly $530 million-worth of FTT. Customers also raced to pull out, and FTX saw an estimated $6 billion in withdrawals over the course of 72 hours, which it struggled to fulfill.[19] The value of FTT plunged 32%, but rallied once again with Bankman-Fried's surprise announcement on Tuesday, November 8th, that Binance would buy FTX, effectively bailing it out.[20]

51.     The next day, Binance announced that it was withdrawing from the deal, citing findings during due diligence, as well as reports of mishandled customer funds and the possibility of a federal

---

[16]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed November 21, 2022).

[17]     https://www.businessinsider.com/ftx-sbf-crypto-saga-explained-what-happened-what-it-means-2022-11?inline-endstory-related-recommendations= (accessed November 21, 2022).

[18]     https://www.coindesk.com/business/2022/11/02/divisions-in-sam-bankman-frieds-crypto-empire-blur-on-his-trading-titan-alamedas-balance-sheet/ (accessed November 21, 2022).

[19]     https://markets.businessinsider.com/news/currencies/ftx-6-billion-withdrawals-72-hours-sam-bankman-fried-binance-2022-11 (accessed November 21, 2022).

[20]     https://markets.businessinsider.com/news/currencies/ftx-6-billion-withdrawals-72-hours-sam-bankman-fried-binance-2022-11 (accessed November 21, 2022).

investigation.[21] The news sent FTT plunging even further — Bankman-Fried saw 94% of his net worth wiped out in a single day.[22] On November 11th, unable to obtain a bailout, FTX filed for Chapter 11 bankruptcy and Bankman-Fried resigned as CEO.[23]

52.     Following his resignation, Bankman-Fried issued a 22-tweet-long explanation of where he believed he and the FTX Entities went wrong:[24]



[21]     https://markets.businessinsider.com/news/currencies/ftx-crash-sec-cftc-probes-asset-liability-shortfall-6-billion-2022-11 (accessed November 21, 2022).

[22]     https://www.businessinsider.com/ftx-ceo-crypto-binance-sam-bankman-fried-wealth-wiped-out-2022-11 (accessed November 21, 2022).

[23]     https://markets.businessinsider.com/news/currencies/ftx-bankruptcy-sam-bankman-fried-ceo-crypto-binance-alameda-markets-2022-11 (accessed November 21, 2022).

[24]     https://twitter.com/SBF_FTX/status/1590709189370081280 (accessed November 21, 2022).













*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*



**SBF** ✓ @SBF_FTX · Nov 10   ···

9) Anyway: right now, my #1 priority--by far--is doing right by users.

And I'm going to do everything I can to do that.  To take responsibility, and do what I can.

💬 162    ↻ 357    ♡ 3,715    ⬆



**SBF** ✓ @SBF_FTX · Nov 10   ···

10) So, right now, we're spending the week doing everything we can to raise liquidity.

I can't make any promises about that.  But I'm going to try.  And give anything I have to if that will make it work.

💬 164    ↻ 394    ♡ 3,377    ⬆



**SBF** ✓ @SBF_FTX · Nov 10   ···

11) There are a number of players who we are in talks with, LOIs, term sheets, etc.

We'll see how that ends up.

💬 87    ↻ 234    ♡ 2,625    ⬆



**SBF** ✓ @SBF_FTX · Nov 10   ···

12) Every penny of that--and of the existing collateral--will go straight to users, unless or until we've done right by them.

After that, investors--old and new--and employees who have fought for what's right for their career, and who weren't responsible for any of the fuck ups.

💬 102    ↻ 274    ♡ 3,007    ⬆

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*







*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*









*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*







53.     According to a recent Reuters report, however, another explanation contributing to
the precarious house of cards that was the Deceptive FTX Platform is that earlier this year, Bankman-
Fried secretly transferred *at least $4 billion* in customer funds from FTX to Alameda without telling
anyone, after Alameda was hit with a series of losses, and that the FTX entities lent more than *half* of
its *$16 billion* in *customer funds* to Alameda in total, with more than *$10 billion in loans
outstanding*.[25]

---

[25]     https://markets.businessinsider.com/news/currencies/ftx-crash-client-funds-alameda-binance-
sbf-sec-cftc-probe-2022-11?utm_medium=ingest&utm_source=markets (accessed November 21,
2022).

**B.      FTX's offer and sale of YBAs, which are unregistered securities.**

54.      Beginning in 2019, the FTX Entities began offering interest-bearing cryptocurrency accounts to public investors. Plaintiff and other similarly situated individuals invested in FTX's YBAs.

55.      FTX maintains that it does not offer for sale any product that constitutes a "security" under federal or state law. Under federal securities laws as construed by the United States Supreme Court in its decision *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) and by the SEC, an investment contract is a form of security under United States securities laws when (1) the purchaser makes an investment of money or exchanges another item of value (2) in a common enterprise (3) with the reasonable expectation of profits to be derived from the efforts of others.

56.      The YBAs were "securities" as defined by the United States securities laws and as interpreted by the Supreme Court, the federal courts, and the SEC. The FTX Entities offered variable interest rewards on crypto assets held in the YBAs on the Deceptive FTX Platform, which rates were determined by the FTX Entities in their sole discretion. In order to generate revenue to fund the promised interest, the FTX Entities pooled the YBA assets to engage in lending and staking activities from which they derived revenue to pay interest on the YBAs. These activities make the YBAs a "security" under state and federal law.

57.      On October 14, 2022, Director of Enforcement of the Texas State Securities Board, Joseph Rotunda, filed a declaration in the Chapter 11 bankruptcy proceedings pending in connection with the collapse of the Voyager Digital cryptocurrency exchange, *In re: Voyager Digital Holdings, Inc., et al.*, Case No. 22-10943 (MEW), ECF No. 536 (Bankr. S.D.N.Y. Oct. 14, 2022), in which he explained how the YBAs are in fact "an offering of unregistered securities in the form of yield-bearing accounts to the residents of the United States." *Id.*, at 6. In his declaration, the pertinent portions of which are reproduced in full for ease of reference, Rotunda explains:

> I am also familiar with FTX Trading LTD ("FTX Trading") dba FTX as described herein. As more fully explained throughout this declaration, I am aware that FTX Trading, along with West Realm Shires Services Inc. dba FTX US ("FTX US"), may be offering unregistered securities in the form of yield-bearing accounts to residents of the United States. These products appear similar to the yield-bearing depository accounts offered by Voyager Digital LTD et al., and the Enforcement Division is now investigating FTX Trading, FTX US, and their principals, including Sam Bankman-Fried.

> I understand that FTX Trading is incorporated in Antigua and Barbuda and headquartered in the Bahamas. It was organized and founded in part by Mr. Bankman-Fried, and FTX Trading appears to be restricting operations in the United States. For example,

domestic users accessing the webpage for FTX Trading at ftx.com are presented with a pop-up window that contains a disclaimer that reads in part as follows:

> Did you mean to go to FTX US? FTX US is a US licensed cryptocurrency exchange that welcomes American users.
>
> You're accessing FTX from the United States. You won't be able to use any of FTX.com's services, though you're welcome to look around the site.

FTX US claims to be regulated as a Money Services Business with FinCEN (No. 31000195443783) and as a money transmitter, a seller of payment instruments and in other non-securities capacities in many different states. It is not, however, registered as a money transmitter or in any other capacity with the Texas Department of Banking and it is not registered as a securities dealer with the Texas State Securities Board.

FTX US owns 75 percent or more of the outstanding equity of FTX Capital Markets (CRD No. 158816) ("FTX Capital"), a firm registered as a broker-dealer with the United States Securities and Exchange Commission, the Financial Industry Regulatory Authority Inc., and 53 state and territorial securities regulators. FTX Capital's registration as a dealer in Texas became effective on May 7, 2012, and the registration continues to remain in force and effect.

FTX US maintains a website at https://ftx.us that contains a webpage for smartphone applications for FTX (formerly Blockfolio)[26] (the "FTX Trading App") and FTX US Pro. Users appear able to click a link in this webpage to download the FTX Trading App even when they reside in the United States.

On October 14, 2022, I downloaded and installed the FTX Trading App on my smartphone. I created an account with FTX Trading through the FTX Trading App and linked the FTX account to an existing personal bank account. During the process, I provided my full first and last name and entered my residential address in Austin, Texas. I also accessed hyperlinks in the FTX Trading App that redirected to the Privacy Policy and Terms of Service. Although I was from the United States and was using the application tied to FTX Trading, the Privacy Policy and Terms of Service were from FTX US - not FTX Trading.

I thereafter used the FTX Trading App to initiate the transfer of $50.00 from my bank account to the FTX account and then transferred .1 ETH from a 3.0 wallet to the FTX account.

---

[26] Based upon information and belief, FTX Trading acquired Blockfolio LLC ("Blockfolio") in or around August 2020. At the time, Blockfolio managed a cryptocurrency application. FTX Trading appears to have thereafter rebranded Blockfolio and its smartphone application as FTX. Now, users can download the FTX Trading App from Apple's App Store or Google's Google Play Store. Although FTX rebranded Blockfolio, the application listing in Apple's App Store still shows the application with developed by Blockfolio.

The transfer of funds from my bank account to the FTX account will take up to six days to complete but the transfer of ETH was processed within a few minutes.

The FTX Trading App showed that I was eligible to earn a yield on my deposits. It also explained the "Earn program is provided by FTX.US" – not FTX Trading.3 It also represented that "FTX Earn rewards are available for US users on a promotional basis."

I recall the FTX Trading App's default settings were automatically configured to enable the earning of yield. The application also contained a link for additional information about yield. I accessed the link and was redirected to a recent article published by "Blockfolio Rebecca" under help.blockfolio.com. The article began as follows:

> You can now earn yield on your crypto purchases and deposits, as well as your fiat balances, in your FTX Trading App! By opting in and participating in staking your supported assets in your FTX account, you'll be eligible to earn up to 8% APY on your staked assets. THIS APY IS ESTIMATED AND NOT GUARANTEED AS DESCRIBED BELOW.

The article also described the payment of yield. It contained a section titled *How do you calculate APY? Does my balance compound daily?* that read, in part, as follows:

> FTX will deposit yield earnings from the staked coins, calculated hourly, on the investment portfolio that is stored in your FTX Trading App. Yield will be compounded on principal and yield you have already earned. Any cryptocurrency that you have deposited on FTX as well as any fiat balance you may have on your account, will earn yield immediately after you have opted into the program.
>
> The first $10,000 USD value in your deposit wallets will earn 8% APY. Amounts held above $10,000 up to $10MM USD in value (subject to market fluctuations) will earn 5% APY. In this scenario, your yield earned on the coins will look something like the examples below the table.

The article also contained a section titled Is this available in my country? This section explained that "FTX Trading App Earn is available to FTX Trading App customers that are in one of the FTX permitted jurisdictions." It contained a hyperlink to an article titled *Location Restrictions* published by FTX Crypto Derivatives Exchange under help.ftx.com. This article described various restrictions on operations in certain countries and locations and read in part as follows:

> **FTX** does not onboard or provide services to corporate accounts of entities located in, established in, or a resident of the **United States of America, Cuba, Crimea and Sevastopol, Luhansk People's Republic, Donetsk People's Republic, Iran, Afghanistan, Syria, or North Korea**. FTX also does not onboard corporate accounts located in or a resident of **Antigua or Barbuda**. FTX also does not onboard any users from Ontario, and FTX does not permit non-professional investors from Hong Kong purchasing certain products.
>
> **FTX does not onboard or provide services to personal accounts of current residents of the United States of America, Cuba, Crimea and Sevastopol, Luhansk People's Republic, Donetsk People's Republic, Iran, Afghanistan, Syria, North Korea, or Antigua and Barbuda**. There may be partial restrictions in other jurisdictions, potentially including Hong Kong,

Thailand, Malaysia, India and Canada. In addition, FTX does not onboard any users from Ontario, does not permit non-professional investors from Hong Kong purchasing certain products, and does not offer derivatives products to users from Brazil.

FTX serves all Japanese residents via FTX Japan.

(emphasis in original)

Despite the fact I identified myself by name and address, the FTX Trading App now shows that I am earning yield on the ETH. The yield is valued at 8 percent APR.

Based upon my earning of yield and an ongoing investigation by the Enforcement Division of the Texas State Securities Board, the yield program appears to be an investment contract, evidence of indebtedness and note, and as such appears to be regulated as a security in Texas as provided by Section 4001.068 of the Texas Securities Act. At all times material to the opening of this FTX account, FTX Trading and FTX US have not been registered to offer or sell securities in Texas. FTX Trading and FTX US may therefore be violating Section 4004.051 of the Texas Securities Act. Moreover, the yield program described herein has not been registered or permitted for sale in Texas as generally required by Section 4003.001 of the Securities Act, and as such FTX Trading and FTX US may be violation Section 4003.001 by offering unregistered or unpermitted securities for sale in Texas. Finally, FTX Trading and FTX US may not be fully disclosing all known material facts to clients prior to opening accounts and earning yield, thereby possibly engaging in fraud and/or making offers containing statements that are materially misleading or otherwise likely to deceive the public. Certain principals of FTX Trading and FTX US may also be violating these statutes and disclosure requirements. Further investigation is necessary to conclude whether FTX Trading, FTX US and others are violating the Securities Act through the acts and practices described in this declaration.

The Enforcement Division of the Texas State Securities Board understands that FTX US placed the highest bid for assets of Voyager Digital LTD et al., a family of companies variously accused of misconduct in connection with the sale of securities similar to the yield program promoted by FTX Trading and FTX US. FTX US is managed by Sam Bankman-Fried (CEO and Founder), Gary Wang (CTO and Founder) and Nishad Singh (Head of Engineering). The same principals hold the same positions at FTX Trading, and I was able to access the yield-earning product after following a link to the FTX Trading App from FTX US's website. The FTX Trading App also indicated the Earn program is provided by FTX US. As such, FTX US should not be permitted to purchase the assets of the debtor unless or until the Securities Commissioner has an opportunity to determine whether FTX US is complying with the law and related and/or affiliated companies, including companies commonly controlled by the same management, are complying with the law.

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

I hereby authorize the Texas Attorney General's Office and any of its representatives to use this declaration in this bankruptcy proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 14, 2022 in Austin, Texas.

/s Joseph Jason Rotunda

By: Joseph Jason Rotunda

## C.  The Defendants Aggressively Marketed the FTX Platform

58.     In addition to the conduct of Defendant Sam Bankman-Fried, as described in this Complaint, some of the biggest names in sports and entertainment have either invested in FTX or been brand ambassadors for the company. A number of them hyped FTX to their social media fans, driving retail consumer adoption of the Deceptive FTX Platform.

59.     In April 2021, FTX became the first company in the crypto industry to name an arena. This helped lend credibility and recognition to the FTX brand and gave the massive fanbase of basketball exposure to the Deceptive FTX Platform.

60.     FTX's explanation for using stars like Brady, Bunchden, and the other Defendants was no secret. "We're the newcomers to the scene," said then-FTX.US President Brett Harrison, referring to the crypto services landscape in the U.S. "The company needs to familiarize consumers with its technology, customer service and offerings, while competing with incumbents like Coinbase Global Inc. or Kraken," Mr. Harrison said. "We know that we had to embark on some kind of mass branding, advertising, sponsorship type work in order to be able to do that," he said.[27]

61.     In other words, the FTX Entities needed celebrities like Defendants to continue funneling investors into the FTX Ponzi scheme, and to promote and substantially assist in the sale of the YBAs, which are unregistered securities. Below are representative statements and advertisements Defendants made to drive the offers and/or sales of the YBAs, which Plaintiff and Class Members will supplement as the case progresses and discovery unfolds.

---

[27] https://www.wsj.com/articles/tom-brady-and-gisele-bundchen-to-star-in-20-million-campaign-for-crypto-exchange-11631116800?mod=article_inline (accessed November 21, 2022).

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

### i.    Tom Brady and Gisele Bundchen



62.    The star quarterback and the businesswoman and model, then a couple, became FTX ambassadors last year. They also took equity stakes in FTX Trading Ltd.

63.    Mr. Brady and Ms. Bündchen also joined the company's $20-million ad campaign in 2021. They filmed a commercial called "FTX. You In?" showing them telling acquaintances to join the FTX platform. The ad can be viewed here: https://www.youtube.com/watch?v=uymLJoKFlW8

### ii.    Kevin O'Leary



*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

64.     "Mr. Wonderful," both a brand ambassador and an FTX shareholder, made several public statements designed to induce consumers to invest in the YBAs.

65.     "To find crypto investments opportunities that met my own rigorous standards of compliance, I entered into this relationship with @FTX_Official," Mr. O'Leary said on Twitter last year. Mr. O'Leary *recently deleted the tweet*.

66.     He also served as a judge for the FTX Charity Hackathon in Miami in March of 2022.[28]

67.     And *very* recently, on October 12, 2022, O'Leary stated confidently that FTX was totally compliant and a safe place to hold assets. O'Leary stated that: "I have to disclose I'm a paid spokesperson to a FTX and shareholder there, too, cause we mentioned him and I'm a big advocate for Sam because he has two parents who are compliance lawyers.  If there's ever a place I could be that I'm not gonna get in trouble it's going to be in FTX so you know that's there they're great people but he gets the job in compliance which is why he's working so hard to get regulation."[29]



68.     He went on to state that "[t]here are a lot of signs right now that point to things looking bad. Crypto has taken a big hit and investors are wondering if things will turn around. If you follow history and the pattern of things, you know that this is RIGHT ON TRACK and we'll soon see a resurgence with crypto. Do you think we're entering a Bullish period? Let me know in the comments!"[30]

---

[28] https://ftxcharityhackathon.com/ (accessed November 21, 2022).
[29] *See* https://www.youtube.com/watch?v=iwD_zWgyUz8 beginning at 17:32 (accessed November 21, 2022)
[30] *Id.*

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

### iii.   Udonis Haslem



69.     Udonis Haslem, the Captain of the Miami HEAT and Miami legend, became an FTX global ambassador. Much like Brady and Bunchden, Haslem starred in FTX's "You In, Miami?" ad campaign that launched at the start of the 2021 - 2022 Miami HEAT season.

70.     In the ad, which be viewed here: https://www.youtube.com/watch?v=83FDP53yPa8, Haslem states "FTX has arrived in 305. So I just got one question: Are you in, Miami?" Others respond "If he's in, I'm in." Haslem concludes "Our city. Our team. FTX. You in, Miami?"

### iv.   David Ortiz



71.      Defendant David Ortiz, who became an FTX brand ambassador and hyped the YBAs in exchange for cryptocurrency and multiple collections of NFTs, also ran his own FTX "You In?" ad, which began running nationwide during the first game of the 2021 World Series.

72.      In the ad, which can be found here: https://www.ispot.tv/ad/qSlm/ftx-big-papi-is-in, Ortiz is watching a game on the television when he receives a phone call from The Moon. Inspired by the "moonblast" home run scored on the field, The Moon frantically tells David about opportunities to get into cryptocurrency with FTX. David decides it's an offer he can't refuse and joins fellow sports stars Stephen Curry and Tom Brady on the platform. FTX announces it is the official crypto exchange of MLB.

     **v.**      **Steph Curry**



73.      Defendant Stephen Curry had his own nationwide ad campaign pushing the Deceptive FTX Platform, known as the "#notanexpert" campaign.[31] Throughout the ad, Curry repeatedly denies being cast as an expert in cryptocurrency, culminating in his statement that "I'm not an expert, ***and I don't need to be.*** With FTX I have everything I need to buy, sell, and trade crypto ***safely.***"[32]

74.      The purpose of Curry being an ambassador is to expand the reach of the crypto firm and "tout the viability of cryptocurrency to new audiences around the world," FTX said in a press

---

[31] https://www.youtube.com/watch?v=gsy2N-XI04o (accessed November 21, 2022).
[32] *Id*.

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

release.[33] In other words, to drive adoption of the Deceptive FTX Platform and to facilitate the sales of unregistered YBAs to unsuspecting and unwitting retail consumers.

75.     "I'm excited to partner with a company that demystifies the crypto space and eliminates the intimidation factor for first-time users," Curry said in the statement, highlighting that "first-time," inexperienced users were the intended targets of the campaign.[34]

>        **vi.     Golden State Warriors**



Official Crypto Platform and NFT Marketplace
of the **Golden State Warriors**

76.     The Golden State Warriors and FTX officially launched their partnership in 2022 with the unveiling of the FTX logo on the court at the Chase Center. As the Warriors' Official Cryptocurrency Platform and NFT Marketplace, the franchise dropped NFTs on FTX.us beginning in early 2022. The partnership between the Warriors and FTX marked the first international rights partner for the Warriors, meaning the GSW and FTX had a visible market presence, inclusive of logo and likeness, internationally.

77.     The deal also included the Warriors' G League team, the Golden Guardians and Warriors Gaming Squad (affiliated esports teams), in-arena signage at Chase Center, and virtual floor signage at Warriors games.[35]

---

[33] https://www.prnewswire.com/news-releases/nba-superstar-stephen-curry-becomes-global-ambassador-and-shareholder-of-leading-cryptocurrency-exchange-ftx-through-long-term-partnership-301370497.html (accessed November 21, 2022).
[34] *Id.*
[35] https://www.instagram.com/p/CYiBaq8JLx7/ (accessed November 21, 2022).

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

### vii.     Shaquille O'Neal



78.     Defendant Shaquille O'Neal, former professional NBA basketball star, sports analyst, and entrepreneur, also became an FTX ambassador, stating in a video posted on FTX's Twitter account that "I'm excited to be partnering with FTX to help make crypto accessible for everyone. I'm all in. Are you?"[36]

---

[36] https://twitter.com/FTX_Official/status/1532119977381208066?s=20&t=5wTm55FDE6c0cCD9vCndYg
(accessed November 21, 2022).

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

viii.    **Trevor Lawrence**



79.    Defendant William Trevor Lawrence, the first pick in the 2021 NFL draft and now quarterback for the Jacksonville Jaguars of the NFL, became a brand ambassador for FTX in exchange for unspecified cryptocurrency payments, which sponsorship was announced in April 2021.[37] The stated purpose of the sponsorship was because "Trevor is someone people can have a personal and human connection with for [FTX] and to the crypto space."[38]

---

[37] https://twitter.com/ftx_app/status/1386667859393253376 (accessed November 21, 2022).
[38] https://www.forbes.com/sites/chriscason/2021/04/26/trevor-lawrence-makes-first-investment-move-with-first-of-its-kind-partnership-with-blockfolio/?sh=7190ee6f47ef (accessed November 21, 2022).

### ix.  Shohei Ohtani



80.     The FTX Entities entered into a long-term partnership with global icon and history-making MLB Superstar Shohei Ohtani. In addition to being an FTX global ambassador, Mr. Ohtani received all of his compensation in equity and cryptocurrencies.[39] In exchange for those unspecified payments, Mr. Ohtani served as a spokesperson for FTX to increase awareness of the Deceptive FTX Platform and to drive adoption of and investments in the unregistered YBA securities on a global scale through a variety of initiatives.[40]

---

[39] https://www.prnewswire.com/news-releases/mlb-superstar-shohei-ohtani-joins-ftx-as-global-ambassador-through-long-term-partnership-301425911.html (accessed November 21, 2022).
[40] *Id.*

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

### x.    Naomi Osaka



81.    Defendant Naomi Osaka, a 24-year-old professional tennis player and four-time Grand Slam singles champion, became a brand ambassador for FTX, with the express purpose of "getting more women to start investing in crypto."[41] Osaka wore the FTX logo on the kit she wore at tournaments, including the 2022 Miami Open. [42] In exchange for an equity stake in FTX and payments in unspecified amounts of cryptocurrency, Osaka directed and produced content in association with the FTX Entities designed to promote the offer and sale of the unregistered YBA securities, hoping "she will reach a global audience."[43]

82.    Osaka confirmed her involvement by tweeting a glitzy new FTX ad to her **1.1 million followers**, which can be viewed here:  https://youtu.be/pkuf8avR50k. It shows the tennis star competing in a comic strip — and over dramatic music, she says: "They thought they made the rules for us. They thought they could control us. They were wrong."

83.    The video then cuts to a boardroom full of marketing executives talking about the ad in a tongue-in-cheek way — and discussing other ideas… including Osaka heading to the moon. An idea to have a QR code bouncing around the screen (a clear nod to Coinbase's Super Bowl spot) is dismissed for being "boring."

---

[41] https://coinmarketcap.com/alexandria/article/naomi-osaka-tennis-star-teams-up-with-ftx-and-she-s-getting-paid-in-crypto-too (accessed November 21, 2022).
[42] *Id.*
[43] *Id.*

84.     They settle on letting Osaka speaking for herself — and play a mock-up of the tennis ace giving an interview to a news channel where she says:  "I'm Naomi Osaka and I'm proud to partner with FTX. Making cryptocurrency accessible is a goal that FTX and I are striving towards." The ad ends with the tagline: "Naomi is in. You in?"

    **xi.**    **Larry David**



85.     For his part, the legendary comedian and creator of *Seinfeld* and *Curb Your Enthusiasm*, Larry David, created an ad for the FTX Entities called "Don't Miss Out on Crypto," which aired during the 2022 Super Bowl, making FTX one of the most retweeted brands during the Super Bowl, and winning the "Most Comical" honorific from *USA Today*'s Ad Meter.[44]

86.     The ad—the only Super Bowl commercial David ever appeared in—featured David being a skeptic on such historically important inventions as the wheel, the fork, the toilet, democracy, the light bulb, the dishwasher, the Sony Walkman, and, of course, FTX, and cautioned viewers, "<u>Don't</u> be like Larry." The ad can be viewed here: https://youtu.be/BH5-rSxilxo

---

[44] https://admeter.usatoday.com/lists/usa-today-ad-meter-replay-ratings-2022-final-results/ (accessed November 21, 2022).

## CLASS ACTION ALLEGATIONS

87.     As detailed below in the individual counts, Plaintiff brings this lawsuit on behalf of himself and all others similarly situated, pursuant to Rule 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure.

### A.     Class Definitions

88.     Plaintiff seeks to represent the following Global Class ("the Class"):

>   (1) **Global Class:** All persons and entities residing outside of the United States who, within the applicable limitations period, purchased or enrolled in a YBA.

Excluded from the Class are Defendants and their officers, directors, affiliates, legal representatives, and employees, the FTX Entities and their officers, directors, affiliates, legal representatives, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

89.     Plaintiff reserves the right to modify or amend the definition of the proposed Global Class, or to include additional classes or subclasses, before or after the Court determines whether such certification is appropriate as discovery progresses. Plaintiff seeks certification of the Global Class in part because all offers of FTX YBAs to Plaintiff and the Class Members (in which Defendants each substantially participated) were made by FTX from their principal place of business in Miami, Florida, and thus every single offer to sell an FTX YBA stems from a transactional occurrence that emanated from the State of Florida.

### B.     Numerosity

90.     The Class is comprised of thousands, if not millions, of consumers globally, to whom FTX offered and/or sold YBAs. Moreover, thousands, if not millions, of consumers worldwide have executed trades on the FTX Platform within the applicable limitations period. Membership in the Class is thus so numerous that joinder of all members is impracticable. The precise number of class members is currently unknown to Plaintiff but is easily identifiable through FTX's corporate records.

### C.     Commonality/Predominance

91.     This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

>   (a) whether the YBAs were unregistered securities under federal or Florida law;

(b) whether Defendants' participation and/or actions in FTX's offerings and sales of YBAs violate the provisions of the Securities Act and Florida securities law.

(c) the type and measure of damages suffered by Plaintiff and the Class.

(a) whether Defendants' practices violate the FDUTPA;

(b) whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(c) whether Plaintiff and Class members are entitled to injunctive relief;

(d) whether Plaintiff and Class members are entitled to declaratory relief; and

(e) whether Plaintiff and Class members are entitled to consequential damages, punitive damages, statutory damages, disgorgement, and/or other legal or equitable appropriate remedies as a result of Defendants' conduct.

## D.    Typicality

92.     Plaintiff's claims are typical of the claims of the members of the Class because all members were injured through the uniform misconduct described above, namely that Plaintiff and all class members were offered and/or sold FTX's YBAs because of Defendants' actions and/or participation in the offering and sale of these unregistered securities, and Plaintiff is advancing the same claims and legal theories on behalf of himself and all such members. Further, there are no defenses available to either Defendant that are unique to Plaintiff.

## E.    Adequacy of Representation

93.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class. Plaintiff anticipates no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiff has chosen the undersigned law firms, which has the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

## F.    Requirements of Fed. R. Civ. P. 23(b)(3)

94.     The questions of law or fact common to Plaintiff's and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed members of the Class are based on the common course of conduct by Defendants (1) in marketing, offering, and/or selling the YBAs, which are unregistered

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

securities, and/or (2) in receiving secret undisclosed compensation for their promotion of the Deceptive FTX Platform.

95.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

96.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Class as is in the case at bar, common questions will be held to predominate over individual questions.

**G.     Superiority**

97.     A class action is superior to individual actions for the proposed Class, in part because of the non-exhaustive factors listed below:

    (a) Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside nationwide and throughout the state;

    (b) Individual claims by Class members are impracticable because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

    (c) There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

    (d) The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

    (e) Individual suits would not be cost effective or economically maintainable as individual actions; and

    (f) The action is manageable as a class action.

**H.     Requirements of Fed. R. Civ. P. 23(b)(2)**

98.     Defendants have acted and refused to act on grounds generally applicable to the classes by engaging in a common course of conduct of aiding and abetting the offering and/or selling the YBAs, which are unregistered securities, thereby making appropriate final injunctive relief or declaratory relief with respect to the classes as a whole.

99.     Defendants have acted and refused to act on grounds generally applicable to the classes by engaging in a common course of conduct of uniformly identical and uniform misrepresentations and omissions in receiving secret undisclosed compensation for their promotion of the Deceptive

FTX Platform, thereby making appropriate final injunctive relief or declaratory relief with respect to the classes as a whole.

## I.   Requirements of Fed. R. Civ. P. 23(c)(4)

100.   As it is clear that one of the predominant issues regarding Defendants' liability is whether the YBAs FTX offered and/or sold are unregistered securities, utilizing Rule 23(c)(4) to certify the Class for a class wide adjudication on this issue would materially advance the disposition of the litigation as a whole.

101.   As it is clear that another predominant issue regarding Defendants' liability is whether they have violated the consumer protection and securities laws of Florida in making identical and uniform misrepresentations and omissions regarding the functionality of the Deceptive FTX Platform, and/or in receiving secret undisclosed compensation for their promotion of the Deceptive FTX Platform, utilizing Rule 23(c)(4) to certify the Class for a class wide adjudication on this issue would materially advance the disposition of the litigation as a whole.

## J.   Nature of Notice to the Proposed Class.

102.   The names and addresses of all Class Members are contained in the business records maintained by FTX and are readily available to FTX. The Class Members are readily and objectively identifiable. Plaintiff contemplates that notice will be provided to Class Members by e-mail, mail, and published notice.

<u>**COUNT ONE**</u>

**Violations of the Florida Statute Section 517.07,**

**The Florida Securities and Investor Protection Act**

**(Plaintiff Individually and on behalf of the Global Class)**

103.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–94 above, as if fully set forth herein.

104.   Section 517.07(1), Fla. Stat., provides that it is unlawful and a violation for any person to sell or offer to sell a security within the State of Florida unless the security is exempt under Fla. Stat. § 517.051, is sold in a transaction exempt under Fla. Stat. § 517.061, is a federally covered security, or is registered pursuant to Ch. 517, Fla. Stat.

105.   Section 517.211 extends liability to any "director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security."

106.     The YBA is a security pursuant to Fla. Stat. § 517.021(22)(a).

107.     The YBAs sold and offered for sale to Plaintiff and Class members were not:

    a.     exempt from registration under Fla. Stat. § 517.051;

    b.     a federal covered security;

    c.     registered with the Office of Financial Regulations (OFR); or

    d.     sold in a transaction exempt under Fla. Stat. § 517.061.

108.     The FTX Entities sold and offered to sell the unregistered YBAs to Plaintiff and the members of the Class.

109.     Defendants are directors, officers, partners and/or agents of the FTX Entities pursuant to Fla. Stat. § 517.211.

110.     The FTX Entities, with Defendants' material assistance, offered and sold the unregistered YBAs to Plaintiff and the members of the Class. As a result of this assistance, Defendants violated Fla. Stat. § 517.07 et seq. and Plaintiff and members of the Class sustained damages as herein described.

## COUNT TWO

### For Violations of the Florida Deceptive and Unfair Trade Practices Act,
### § 501.201, Florida Statutes, *et seq.*
### (Plaintiff Individually and on behalf of the Global Class)

111.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–94 above, as if fully set forth herein.

112.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq.* ("FDUTPA"). The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

113.     Plaintiff and Class members are consumers as defined by section 501.203, Fla. Stat. Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

114.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

115.    Defendants' unfair and deceptive practices as described herein are objectively likely to mislead – and have misled – consumers acting reasonably in the circumstances.

116.    Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

117.    Plaintiff and consumers in the Class have been aggrieved by Defendants' unfair and deceptive practices and acts of false advertising by paying into the Ponzi scheme that was the Deceptive FTX Platform and in the amount of their lost investments.

118.    The harm suffered by Plaintiff and consumers in the Class was directly and proximately caused by the deceptive and unfair practices of Defendants, as more fully described herein.

119.    Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiff and consumers in the Class make claims for actual damages, attorneys' fees and costs.

120.    Defendants still utilize many of the deceptive acts and practices described above. Plaintiff and the other members of the Class have suffered and will continue to suffer irreparable harm if Defendants continue to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiff and the Class to obtain both declaratory or injunctive relief to put an end to Defendants' unfair and deceptive scheme.

## COUNT THREE

### Civil Conspiracy

### (Plaintiff Individually and on behalf of the Global Class)

121.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1–94 above, as if fully set forth herein.

122.    The FTX Entities and Defendants made numerous misrepresentations and omissions to Plaintiff and Class Members about the Deceptive FTX Platform in order to induce confidence and to drive consumers to invest in what was ultimately a Ponzi scheme, misleading customers and prospective customers with the false impression that any cryptocurrency assets held on the Deceptive FTX Platform were safe and were not being invested in unregistered securities.

123.    The FTX Entities entered into one or more agreements with Defendants with the purpose of making these misrepresentations and/or omissions to induce Plaintiff and consumers to invest in the YBAs and/or use the Deceptive FTX Platform.

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

124. Defendants engaged in unlawful acts with the FTX Entities, namely, the misrepresentations and omissions made to Plaintiff and the Class and the sale of unregistered securities.

125. Defendants' conspiracy substantially assisted or encouraged the wrongdoing conducted by the FTX Entities; further, Defendants had knowledge of such fraud and/or wrongdoing, because of their experience and relationship with the FTX Entities, as described above and as such, knew that the representations made to Plaintiff were deceitful and fraudulent.

126. Defendants' conspiracy with the FTX Entities to commit fraud caused damages to Plaintiff and the Class in the amount of their lost investments.

<u>**COUNT FOUR**</u>

**Declaratory Judgment**

**(Declaratory Judgment Act, Florida Statutes §§ 86.011 *et seq.*)**

**(Plaintiff Individually and on behalf of the Global Class)**

127. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–94 as if fully set forth herein.

128. This Count is asserted against Defendants under Florida Statutes §§ 86.011, *et seq.*

129. There is a bona fide, actual, present and practical need for the declaratory relief requested herein; the declaratory relief prayed for herein deal with a present, ascertained or ascertainable state of facts and a present controversy as to a state of facts; contractual and statutory duties and rights that are dependent upon the facts and the law applicable to the facts; the parties have an actual, present, adverse and antagonistic interest in the subject matter; and the antagonistic and adverse interests are all before the Court by proper process for final resolution.

130. Plaintiff and the members of the Class have an obvious and significant interest in this lawsuit.

131. Plaintiff and members of the Class purchased YBAs, based in part on justifiable reliance on the Defendants' misrepresentations and omissions regarding the Deceptive FTX Platform as further described hereinabove.

132. If the true facts had been known, including but not limited to that the YBAs are unregistered securities, the Deceptive FTX Platform does not work as represented, and Defendants were paid exorbitant sums of money to peddle Voyager to the nation, Plaintiff and the Class would not have purchased YBAs in the first place.

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

133.    Thus, there is a justiciable controversy over whether the YBAs were sold illegally, and whether the Defendants illegally solicited their purchases from Plaintiff and the Class.

134.    Plaintiff and the Class seek an order declaring that the YBAs were securities required to be registered with the SEC and state regulatory authorities, that the Deceptive FTX Platform did not work as represented, and Defendants were paid exorbitant sums of money to peddle FTX to the nation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for a judgment on behalf of himself and the Class:

   a.    Certifying the Class as requested herein;

   b.    Awarding actual, direct and compensatory damages;

   c.    Awarding restitution and disgorgement of revenues if warranted;

   d.    Awarding declaratory relief as permitted by law or equity, including declaring the Defendants' practices as set forth herein to be unlawful;

   e.    Awarding injunctive relief as permitted by law or equity, including enjoining the Defendants from continuing those unlawful practices as set forth herein, and directing the Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

   f.    Awarding statutory and multiple damages, as appropriate;

   g.    Awarding attorneys' fees and costs; and

   h.    Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

*Sunil Kavuri v. Samuel Bankman-Fried, et al.*
*Class Action Complaint and Demand for Jury Trial*

Dated: November 21, 2022                    Respectfully submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

By: */s/ David Boies*
David Boies
(*Pro Hac Vice* Application Forthcoming)
Alex Boies
(*Pro Hac Vice* Application Forthcoming)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Phone: (914) 749–8200
dboies@bsfllp.com

By: */s/ Stephen Neal Zack*
Stephen Neal Zack
Florida Bar No. 145215
Hon. Ursula Ungaro (Ret.)
Florida Bar No. 200883
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com
uungaro@bsfllp.com

*Co-Counsel for Plaintiff and the Class*